# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

STEVEN HAUBENSTRICKER,

    *Plaintiff*,

*v*.                                CASE NO. 08-CV-15218

COMMISSIONER OF             DISTRICT JUDGE JOHN FEIKENS
SOCIAL SECURITY,             MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II.     REPORT

### A.     Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 14.)

Plaintiff was 52 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 12, 30, 41.) Plaintiff's relevant employment history includes work as an assembler in an automobile factory for 28 years. (Tr. at 58.) Plaintiff last worked in November 2004. (*Id.*)

Plaintiff filed the instant claim on July 29, 2005, alleging that he became unable to work on November 3, 2004. (Tr. at 41.) The claim was denied at the initial administrative stages. (Tr. at 30.) In denying Plaintiff's claims, the Defendant Commissioner considered carpal tunnel syndrome and C6-7 radiculopathy, left, as possible bases of disability. (*Id.*)

On January 18, 2008, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Regina Sobrino, who considered the application for benefits *de novo*. (Tr. at 9-17.) In a decision dated January 25, 2008, the ALJ found that Plaintiff was not disabled from the alleged onset date through the date of decision because he was able to perform a limited range of light and sedentary work. (Tr. at 17.) Plaintiff requested a review of this decision on February 6, 2008. (Tr. at 7-8.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on October 30, 2008, when the Appeals Council

2

denied Plaintiff's request for review. (Tr. at 2-4.) On December 18, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.  Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse*

*v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

5

> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     Administrative Record

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff sought treatment with Jeffrey R. Levin, M.D., for

carpal tunnel and cubital tunnel syndrome as well as C6-7 radiculopathy since January 2005. (Tr. at 115-23.) Dr. Levin noted that Plaintiff had hand surgery in 1977 (left), 1992 (left), and 1999 (right). (Tr. at 122.) Dr. Levin diagnosed Plaintiff with "bilateral carpal tunnel syndrome which is severe on the left" and "[p]ossible C6-7 radiculopathy left greater than right." (Tr. at 123.) Dr. Levin treated Plaintiff with pain medication. (Tr. at 115-20.) Plaintiff also underwent an MRI on April 4, 2006, which revealed "[m]ultilevel spondylotic changes, greatest at C5-C6 with broad-based disc/spur causing mild ventral impression on the thecal sac and marked bilateral foraminal narrowing." (Tr. at 113.) "No focal disc herniation [was found] at any level." (*Id.*)

A Physical RFC Assessment concluded that Plaintiff can occasionally lift up to 20 pounds, frequently lift up to ten pounds, stand and/or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and has the unlimited ability to push or pull. (Tr. at 125.) Plaintiff was also found to have "some cervical paraspinal muscle spasm [but] [n]o shoulder weakness." (Tr. at 126.) In addition, "severe atrophy in the abductor pollicis brevis of left hand and mild in right hand" was noted. (*Id.*) "Tinel's and Phelan's sign [was also noted] at both wrists." (*Id.*) Plaintiff was also found to be unlimited in all the postural abilities except that it was noted that Plaintiff should not climb ladders/ropes/scaffolds. (*Id.*) Plaintiff was found to be limited in his ability to handle, finger, and feel, but was unlimited in his ability to reach. (Tr. at 127.) There were no visual or communicative limitations noted. (Tr. at 127-28.) As to environmental limitations, the only limitation noted was regarding avoiding concentrated exposure to hazards. (Tr. at 128.) The assessment also indicated that the limitations noted applied primarily to his left hand and that Plaintiff is right-handed. (Tr. at 129.) The assessment also noted that "[p]ain and other symptoms have been considered in assessing RFC." (*Id.*)

7

Plaintiff indicated in his activity report that he is able to care for his own personal needs despite the fact that he has difficulty holding objects and drops them at times. (Tr. at 83.) Plaintiff prepares his own "quick and easy" meals, does "very little" housework, drives, is able to go out alone, watches television, and is able to handle his own finances. (Tr. at 84-85, 107.) Plaintiff indicated that he does not do any shopping and has no hobbies or interests but that he does visit others occasionally, including his girlfriend and his grandchildren. (Tr. at 85-86, 106-07.) Plaintiff uses braces for his hands and elbows. (Tr. at 88.) His daily activity report indicated that he went to the store with his girlfriend and waited in the car while she shopped. (Tr. at 107.)

Plaintiff testified at the administrative hearing that he can sit in a chair for "20 minutes to a half hour." (Tr. at 146.) He further stated that "[u]sually I use two hands like to even just use a gallon of milk because some days like this morning, I apologize to the Court, but I wasn't even able to hold a razor to shave." (Tr. at 147.) Plaintiff indicated that he could not hold the razor because "[m]y fingers are swelled . . . ." (Tr. at 147.) When asked why his fingers were swollen, Plaintiff responded, "They've been doing that for years. I believe it's to do with the carpal tunnel and the neck problems." (*Id.*) Plaintiff also testified he can hold a pencil and reach "[s]ome days better than others." (*Id.*) He further testified that he has no trouble bending his knees and crouching but that he can only stay bent at the waist for a couple minutes. (*Id.*) He can manage stairs but gets "out of breath" due to what he believes may be a possible lung problem, although he has not been to a doctor to address it. (Tr. at 148.) Plaintiff stated that his girlfriend does the cooking and shopping and that he belongs to the "Oldies But Goodies Car Club," which meets on Saturday nights during the summer and once a month during the winter. (Tr. at 148-49.) Plaintiff indicated that he visits friends and friends visit him and that he is able to bathe and dress himself but sometimes has trouble with zippers and buttons. (Tr. at 149.) He also mows his small lawn

on a riding mower and he is able to drive a car. (*Id.*) Plaintiff testified that he sees Dr. Levin every three to six months and that he has not been hospitalized nor has he sought emergency room treatment since he stopped working. (Tr. at 150.) Plaintiff indicated that he has limited movement in his left thumb due to an accident where he put his left hand through a window, but when asked when that happened, he responded that it was in 1979. (Tr. at 151-52.) Finally, Plaintiff testified that he doesn't sleep well and therefore naps frequently. (Tr. at 154.)

The ALJ asked the vocational expert ("VE") to consider a hypothetical person with Plaintiff's background and

> who is limited to lifting, carrying, pushing and pulling 5 pounds frequently and 10 pounds occasionally. The person should be able to use both hands to do these maneuvers. Assume a person who can stand and walk about six hours in an eight hour workday, and sit up to eight hours in an eight hour workday. The person should not climb ladders, ropes, or scaffolds, should not need to tightly grip. Assume a person limited to frequent handling, fingering, and feeling. The person should not need to reach overhead. There should be no exposure to hazards or to vibration.

(Tr. at 155.) The VE testified that such a person could perform jobs such as retail sales, security guard, and greeter in the light and unskilled area and general office clerk, visual surveillance monitor and receptionist positions in the sedentary area. (Tr. at 156.) The VE further testified to the numbers of jobs available in the regional and national economy. (*Id.*) In addition, the VE noted that the above-cited jobs only require occasional fingering except for general office clerk position which requires frequent fingering. (*Id.*) Plaintiff's counsel inquired whether a sit/stand at-will option would render only the sedentary positions appropriate and the VE responded affirmatively. (Tr. at 157.)

### E.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged

onset date of November 3, 2004. (Tr. at 14.) At step two, the ALJ found that Plaintiff's degenerative disc disease and carpal tunnel and cubital tunnel syndromes were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff lacked the residual functional capacity to perform his past relevant work as an auto assembler. (Tr. at 16.) At step five, the ALJ found that Plaintiff is able to perform a limited range of light and sedentary work. (Tr. at 15-16.) Thus, the ALJ found that Plaintiff was not disabled. (Tr. at 17.)

**F.    Analysis and Conclusions**

**1.    Legal Standards**

As mentioned, the ALJ determined that Plaintiff possessed the residual functional capacity to undertake a limited range of light and sedentary work. (Tr. at 16-17. ) Light work is defined by the Commissioner as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other

sedentary criteria are met. 20 C.F.R. § 404.1567(a) (1991). Social Security Ruling ("SSR") 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251.

> The Commissioner has also ruled that:
>
> The major difference between sedentary and light work is that most light jobs – particularly those at the unskilled level of complexity – require a person to be standing or walking most of the workday. Another important difference is that the frequent lifting or carrying of objects weighing up to 10 pounds (which is required for the full range of light work) implies that the worker is able to do occasional bending of the stooping type; i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist. Unlike unskilled sedentary work, many unskilled light jobs do not entail fine use of the fingers. Rather, they require gross use of the hands to grasp, hold and turn objects.

SSR 83-14.

After review of the record, I first suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Analysis of Plaintiff's Argument

As noted by the Commissioner's motion and brief, Plaintiff does not argue that substantial evidence fails to support the findings of the Commissioner. (Doc. 14 at 9.) Plaintiff's only argument is that the ALJ erred as a matter of law by improperly concluding that Plaintiff did not meet or equal Listing 1.04A. (Doc. 11 at 6.) Defendant argues that although Plaintiff proffers

complaints of pain and stiffness, Plaintiff "does not identify any medical evidence that he experiences limited motion of the spine as is required to meet Listing 1.04A" and that the ALJ cannot "'substitute allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of the individual's impairment(s) to that of a listed impairment.' 20 C.F.R. § 404.1529(d)(3)." (Doc. 14 at 10.)

Listing 1.04A applies to disorders of the spine and requires "[e]vidence of nerve root decompression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg-raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A. Listing 1.04A; *Lawson v. Comm'r of Social Security*, 192 Fed. App'x 521, 529 (6th Cir. 2006). A Plaintiff's impairment must match all the specified medical criteria in order to show the impairment meets a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990); 20 C.F.R. § 404.1525(c); *Golay v. Comm'r of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003). Plaintiff cannot rely on the "overall functional impact of his unlisted impairment or combination of impairments" to satisfy equivalence to a Listing. *Zebley*, 493 U.S. at 531. Where the record lacks medical evidence supporting limitation in the range of motion and loss of motor reflex, the Listing is not met. *Lawson*, 192 Fed App'x at 529.

Plaintiff contends that he has shown evidence of "radicular symptoms" and radiculopathy as well as "bilateral weakness of the biceps and triceps . . . [and] the index finger bilaterally left greater than right also extending into the middle finger in the left hand, not seen in the right." (Doc. 11 at 7; Tr. at 122.) Plaintiff also cites to evidence of paraspinal muscle spasms. (Doc. 11 at 8; Tr. at 117.) Although there is evidence in the record regarding atrophy in his hands or wrists

12

(Tr. at 126), there is no evidence of atrophy or muscle weakness of Plaintiff's spine, nor is there any evidence regarding loss of range of motion or sensory or reflex loss. This lack of medical evidence regarding any part of the criteria required under Listing 1.04A is fatal to Plaintiff's contention that Listing 1.04A was met. *West v. Astrue*, No. 3:08-CV-124, 2009 WL 2168683, at *5 (E.D. Tenn. July 17, 2009); *Campbell v. Comm'r of Social Security*, No. 07-13252, 2008 WL 2670218, at *4 (E.D. Mich. June 27, 2008). In addition, I note that there is no medical opinion evidence that Plaintiff meets Listing 1.04A.

I therefore suggest that Plaintiff's contention that the ALJ erred by finding that he did not meet any Listed Impairment, i.e., Listing 1.04A, is without merit. After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier*

13

*Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/ *Charles E. Binder*
                                        CHARLES E. BINDER
Dated: September 28, 2009                    United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  September 28, 2009                    By    s/Patricia T. Morris
                                                                          Law Clerk to Magistrate Judge Binder